UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

In the Matter of
Subpoena to Robert Garvin

DRIFTLESS AREA LAND
CONSERVANCY and
WISCONSIN WILDLIFE
FEDERATION,

Plaintiffs,

      Case No.

   v.

MICHAEL HUEBSCH,
REBECCA VALCQ, and
ELLEN NOWAK, Commissioners, and
PUBLIC SERVICE COMMISSION OF
WISCONSIN,

Defendants.

---

### NON-PARTY ROBERT GARVIN'S MOTION TO QUASH PLAINTIFFS' SUBPOENA PURSUANT TO FED. R. CIV. P 45(d)(3)

---

Pursuant to Fed. R. Civ. P. 45(d)(3), Robert Garvin respectfully moves the Court to quash Plaintiffs' subpoena to testify on November 2, 2020 at a deposition in the civil action entitled *Driftless Area Land Conservancy v. Huebsch* (the "Deposition Subpoena"). The *Driftless* matter is pending as Case No. 19-CV-1007 in the Western District of Wisconsin. Mr. Garvin's Declaration in support of this Motion ("Garvin Decl.") is attached as Exhibit "A" and a copy of the Deposition Subpoena is Exhibit "1" thereto.

### INTRODUCTION

The parties and background to the *Driftless* litigation pending in the Western District can

be summarized, at a high level, as follows:

- In the Western District, Plaintiffs **Driftless Area Land Conservancy** and **Wisconsin Wildlife Federation** have lodged a federal due process challenge to a decision of the Public Service Commission of Wisconsin ("PSC"). Plaintiffs also seek review of the PSC's ruling under Wisconsin adminstrative law in a parallel case pending in the Dane County Circuit Court, Case No. 19-CV-3418. Plaintiffs issued the Deposition Subpoena to Mr. Garvin that is at issue in this Motion to Quash.

- **Michael Huebsch**, **Rebecca Valcq**, and **Ellen Nowak** are the PSC Commissioners who issued the unanimous decision now challenged by the Plaintiffs. These individuals, together with the **PSC**, are Defendants in both *Driftless* and the parallel state court action in Dane County.

- **American Transmission Company ("ATC")**, **ITC Midwest LLC**, and **Dairyland Power Cooperative ("Dairyland")** were the prevailing parties in the PSC proceeding at issue. They have intervened as Defendants in both *Driftless* and the parallel state court suit.

***

- Movant **Robert Garvin** is not, and was not, a party to any of the above-referenced proceedings. Neither is, or was, his employer, **WEC Energy Group ("WEC")**.[1]

***

Mr. Garvin is the Executive Vice President - External Affairs for WEC, a Wisconsin public utility holding company. (Garvin Decl., ¶ 2.) Plaintiffs subpoenaed Mr. Garvin to give deposition testimony on November 2, 2020 in the lawsuit they filed in the Western District of Wisconsin against the Public Service Commission of Wisconsin ("PSC") and three PSC Commissioners. (*Id.*, ¶ 4 & Exh. 1 thereto.) Neither Mr. Garvin nor WEC are parties to that lawsuit. (*Id.*, ¶ 5; *see also Driftless* Dkt. 1 (Complaint), attached hereto as Exhibit "B.") Nor were Mr. Garvin or WEC

---

[1] WEC is a partial owner of ATC because it was formed in 2000 by Wisconsin electric utilities and cooperatives that agreed to contribute their high voltage transmission lines to the new entity pursuant to Wis. Stat. § 196.485. Under state law, ATC is obligated to construct, operate, maintain, and expand transmission facilities to provide reliable, adequate transmission service on a non-discriminatory basis and is subject to the jurisdiction of the Federal Energy Regulatory Commission. *Id.* (Garvin Decl. ¶ 14.) Today, ATC is owned by 26 investor-owned electric utilities (or their holding companies), municipal electric utilities and electric cooperatives. (*Id.*) *See* https://www.atcllc.com/about-us/owners/.

2

involved directly, indirectly, or tangentially in the contested case before the PSC that led to the lawsuit. (Garvin Decl., ¶ 5.)

In fact, the *sole* apparent basis for Plaintiffs' demand to depose Mr. Garvin is a reference to him in a single text message dated April 2019, five months before the PSC's decision that is the subject of the *Driftless* lawsuit, and among the 12,000 pages of documents that the PSC has produced in the lawsuit. (*Driftless* Dkt. 108 at 9.) In that text message between Commissioner Huebsch and Mr. Garvin's brother—John Garvin, who works at ATC—Commissioner Huebsch wishes him well the day prior to a major heart surgery. Commissioner Huebsch makes a passing reference to Mr. Robert Garvin and suggests that he might keep the Commissioner and others updated on his brother's condition following that procedure. Plaintiffs assert that this single communication now necessitates extensive discovery in a federal lawsuit to determine whether Commissioner Huebsch had a conflict of interest and should have recused himself from the underlying PSC proceeding. What Plaintiffs cannot explain without resorting to rank speculation is why the relationship between Commissioner Huebsch and Mr. Garvin, which goes back thirty years, is relevant to any of Plaintiffs' claims in this case.

The current state of the litigation in the Western District which generated the Deposition Subpoena at issue is precarious, at best. As of this filing, the Defendants' Motion to Dismiss Plaintiffs' Complaint (in its entirety) is fully briefed and awaiting a ruling from Judge Conley. (*Driftless* Dkt. 6–7.) Because the Motion is based in part on a sovereign immunity defense, Defendants are entitled to an immediate appeal if it is denied. *See Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001). Also pending before the Western District in *Driftless* is a recently-filed Motion to Stay All Proceedings pending Judge Conley's ruling on the Motion to Dismiss. (*Driftless* Dkt. 101.) So, too, are Plaintiffs' Motion to Compel Defendants to produce

communications involving WEC (and, by extension, Mr. Garvin) and Plaintiffs' Motion for a Protective Order preventing Plaintiffs' *own* depositions from being taken. (*Driftless* Dkt. 97, 94.) To date, no party's deposition has been taken in the case. (Declaration of Patrick S. Nolan ("Nolan Decl."), attached hereto as Exhibit "C," ¶ 3.)

Under these procedural circumstances, it makes little sense for Mr. Garvin's deposition to move forward. And when the facts of the underlying case are considered, it makes no sense at all: Mr. Garvin's testimony is not remotely relevant to the claims and defenses at issue. And, even if his testimony might be considered relevant, there are myriad other ways of obtaining the evidence Plaintiffs purportedly seek without burdening Mr. Garvin—starting with deposing the actual parties to the litigation. To avoid filing this motion to quash, on October 27, 2020, Mr. Garvin's counsel communicated these concerns to Plaintiffs' counsel and requested that Plaintiffs withdraw or postpone Mr. Garvin's deposition. Plaintiffs refused to do so. (*Id.*, ¶ 4.)

As shown herein, taking Mr. Garvin's deposition would impose an undue burden and, under Fed. R. Civ. P. 45(d)(3), Plaintiffs' deposition subpoena to Mr. Garvin must be quashed.

## BACKGROUND

### The Underlying *Driftless* Litigation

In September 2019, the PSC granted a Certificate of Public Convenience and Necessity ("CPCN") for the construction of a high-voltage transmission line in western Wisconsin. (Exh. B, ¶¶ 4–5, 19.) The Commission found this line to be a necessary part of a larger infrastructure project to bring inexpensive and abundant renewable energy generated in the Great Plains to the eastern United States. (*See generally Driftless* Dkt. 7-1.) Three private entities—ATC, ITC Midwest LLC, and Dairyland—will jointly own the project, which is known as the Cardinal-Hickory Creek line. (Exh. B, ¶ 4.)

Plaintiffs Driftless Area Land Conservancy and Wisconsin Wildlife Federation contested the CPCN before the PSC. (*Id.*, ¶ 7–8.) Their objections ranged from environmental and economic concerns about the transmission line to the alleged impartiality of the Commissioners tasked with ruling on the matter.[2] (*E.g.*, *id*, ¶¶ 9, 13–14, 18.) After a week of hearings, including testimony and cross examination of both lay and expert witnesses, the Commission ruled unanimously, 3-0, to grant the CPCN. (*See generally Driftless* Dkt. 7-1.) Displeased with the PSC's ultimate approval of the project, in December 2019 Plaintiffs sued the PSC and the Commissioners in the Western District of Wisconsin. (*See generally* Exh. B.)

Plaintiffs' Complaint focuses on their claim that two of the three PSC Commissioners who decided the case should have recused themselves because of alleged conflicts of interest. (*See id.*, ¶¶ 4, 17–18, & p.32, ¶¶ 1–2.) Plaintiffs broadly allege that "entanglements with other parties centrally involved in the case presented conflicts of interest and at least an appearance of bias and lack of impartiality" on the part of Commissioner Michael Huebsch and Commission Chair Rebecca Valcq. (*Id.*, ¶ 3).

As for Commissioner Huebsch, the Complaint alleges that his "entanglements with MISO presented a conflict of interest and created at least the appearance of bias and impropriety if not actual bias and impropriety." (*Id.*, ¶ 160.) MISO was a party to the case before the PSC. According to Plaintiffs, "MISO is a regional transmission organization that services the high-voltage transmission system in the Midwest states, Manitoba, and a southern region including much of Arkansas, Mississippi, and Louisiana." (*Id.*, ¶ 82.) Plaintiffs claim that MISO "developed and approved the proposed ATC line as part of its 'Multi Value Portfolio' a decade ago." (*Id.*, ¶

---

[2] Plaintiffs waited, perhaps opportunistically, to raise the Commissioners' supposed bias until after the PSC had already decided to issue the CPCN. (Exh. B, ¶¶ 145–46; *see also Driftless* Dkt. 7 at 2.)

5

92.) Plaintiffs attached as an Exhibit to the Complaint a publicly-available "Membership Listing" for MISO that includes Wisconsin Electric Power Company and Wisconsin Public Service Corporation, two subsidiaries of WEC (Mr. Garvin's employer), among *187* other members. (*Driftless* Dkt. 1-9.)

Plaintiffs' objection to Commissioner Valcq's participation in the contested case is based on her past employment as in-house counsel for WEC and at Quarles & Brady, LLP, which serves as an outside law firm for WEC. Plaintiffs allege that "[t]he extent of Chair Valcq's relationship with We Energies and WEC Energy Group . . . creates at least an appearance of bias and lack of impartiality." (Exh. B, ¶¶ 58, 63–63, 150.)[3]

The Complaint does not allege any specific facts establishing WEC's particular interest in the Cardinal-Hickory Creek transmission line. As is publicly known, WEC is a partial owner of one of the applicants (ATC). The PSC CPCN was one of many approvals needed for the project and WEC has taken no position—nor does it have one—on where the transmission line will be placed. Hence, it had no involvement in the PSC proceeding whatsoever, as a party or otherwise. (Garvin Decl., ¶ 5.) Indeed, when ATC solicited WEC and other ATC members to submit a letter to the PSC in support of the project, WEC declined to do so. (*Id.*, ¶ 5.) WEC also declined to intervene in the proceeding as a Party. (*Id.*)

---

[3] The Complaint's repeated references to "We Energies" are imprecise. We Energies is not a corporation but rather is a trade name for the joint operations of two of WEC's subsidiaries: Wisconsin Electric Power Company and Wisconsin Gas LLC. Wisconsin Gas LLC is solely a natural gas utility; it has no electric operations whatsoever. Wisconsin Electric Power Company is a combined electric, natural gas, and steam utility. Despite the imprecision in the Plaintiffs' Complaint, for purposes of this Motion, it is assumed that when they say "We Energies," the Plaintiffs actually intend Wisconsin Electric Power Company. That is the way "We Energies" will be used in this Motion.

6

Plaintiffs' Complaint asserts claims for "procedural due process," "due process and eminent domain," and "due process and taking for private use." (Exh. B, pp. 29–31.) Among other things, they seek for the District Court to vacate the CPCN "and prohibit[] Defendants from enforcing it." (*Id.*, p. 32.)

Defendants' Pending Motion to Dismiss

On December 11, 2019, Defendants moved to dismiss the Complaint in its entirety. (*Driftless* Dkt. 7.) Among other arguments for dismissal, Defendants argued that they are immune from Plaintiffs' suit under the Eleventh Amendment. (*Id.* at 8.) Other compelling arguments for dismissal are that the Western District should decline jurisdiction under the *Younger* abstention doctrine since state proceedings remain ongoing (*id.* at 12); and, as argued by Intervenors ATC, ITC Midwest LLC, and Dairyland, even if Commissioners Huebsch and Valcq were required to recuse themselves, *the outcome of the proceedings before the PSC would have been no different* because Commissioner Nowak's single vote was sufficient to approve the CPCN. (*Driftless* Dkt. 17 at 35 (citing Wis. Stat. § 15.06(6)).) Defendants' Motion to Dismiss has been fully briefed since March 13, 2020. (*Driftless* Dkt. 58.)

If the Motion to Dismiss is denied, it is immediately appealable. *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001). Defendants have indicated that they intend to file an interlocutory appeal if their Motion is denied. (Nolan Decl., ¶ 5.)

On October 20, 2020, Intervenor ATC moved to stay all proceedings pending the Court's resolution of the Motion to Dismiss. (*Driftless* Dkt. 101.) That motion is pending.

Relevant Discovery to Date

To date, no depositions have been held in the *Driftless* case. (Nolan Decl., ¶ 3.) On October 14, 2020, Plaintiffs moved for a protective order to avoid their *own* depositions on grounds

7

that "[t]he proposed depositions do not seek information relevant to the parties' claims or defenses, and/or they are not proportional to the needs of this case." (*Driftless* Dkt. 94 at 3.)[4]

Despite the fact that Plaintiffs have not yet deposed any of the Defendants—and seek to avoid being deposed themselves—on October 12, 2020, they served non-party Mr. Garvin with the Deposition Subpoena. The same day, Plaintiffs served Mr. Garvin with a subpoena *duces tecum*, to which Mr. Garvin timely responded. Among other things, the subpoena *duces tecum* sought all of Mr. Garvin's communications with any employee of the PSC, regardless of topic. Mr. Garvin objected to the requests on the basis of relevance, overbreadth, and proportionality. (Nolan Decl., ¶ 6.) In even broader requests simultaneously served upon Mr. Garvin's employer, WEC, Plaintiffs requested "all documents reflecting, recording, noting, memorializing, or describing" any communication—regardless of topic—between any of the Commissioners "or anyone communicating on [their] behalf, such as [their] representative, co-worker, employee, agent, or assistant" (*i.e.*, anyone working for the PSC) on the one hand and any "representative, employee, agent, board member, officer, or attorney" of WEC or any of its many "affiliated entities, parent companies, and subsidiaries" on the other. (*Id.*, ¶ 7.) WEC timely responded, lodging the same objections. (*Id.*)

Plaintiffs issued similar requests to Defendants—and received similar objections.[5] On October 16, 2020, Plaintiffs moved to compel Defendants to produce "records of communications between Commissioner Huebsch and WEC Energy Group and We Energies and their affiliates"—

---

[4] Plaintiffs clearly take a different approach to what is "relevant" to the case when the tables are turned.

[5] It is apparent that Plaintiffs' broad discovery efforts in *Driftless* are intended (at least in part) to bolster their claims in the parallel proceeding they have brought in the Dane County Circuit Court. Indeed, on October 19, 2020 Plaintiffs moved the Circuit Court to accept as non-record evidence in the Court's review of the PSC proceeding text messages that Plaintiffs received from Defendants in discovery in *Driftless* (among other things). (Nolan Decl., ¶ 8 & Exh. 1 thereto.)

8

regardless of the nature or topic of communication.  (*Driftless* Dkt. 97 at 2.)   In that Motion, Plaintiffs noted that, based on what they have received in discovery, "Commissioner Huebsch likely had a personal relationship with [Mr. Garvin]," which they deem "relevant to whether Commissioner Huebsch's actions created at least the appearance of bias." (*Id.* at 9–10.)  The Western District ordered Defendants to submit the documents at issue for *in camera* review, but has not yet ruled on whether they must be produced.  (*Driftless* Dkt. 99.)

## LEGAL STANDARD

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "The Seventh Circuit applies a 'relative hardship test,' considering whether the burden of compliance would exceed the benefit of production of the materials sought. *In re Subpoenas to Wisconsin Energy Corp.*, No. 10-MC-7, 2010 WL 715429, at *1 (E.D. Wis. Feb. 24, 2010) (quoting *Northwestern Memorial Hosp. v. Ashcroft,* 362 F.3d 923, 927, 933 (7th Cir. 2004)). "Additionally, the Court may consider whether the subpoena seeks discovery that is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(2)).  "Non-parties are not treated exactly like parties in the discovery context, and the possibility of mere relevance may not be enough; rather, **non-parties are entitled to somewhat greater protection**." *Id.* (emphasis added; quotation marks omitted).  "[W]hile it is [the movant's] burden to put forth evidence of the burden on her, [the party seeking the deposition] must respond with evidence of a need that outweighs this burden." *Ameritox, Ltd. v. Millennium Health, LLC*, No. 15-CV-31-WMC, 2015 WL 420308, at *2 (W.D. Wis. Feb. 2, 2015).

9

**LEGAL ARGUMENT**

In moving for a protective order to prevent their *own* depositions from being taken, Plaintiffs asserted that: "Before anyone, party or non-party, can be forced to submit to a deposition, the evidence that is sought must be relevant." (*Driftless* Dkt. 94 at 9 (quoting *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, at 813–14) (N.D. Ill. 2015).)[6] This required relevance standard is even ***higher*** where, as here, a non-party's deposition is sought. *In re Subpoenas to Wisconsin Energy Corp.*, 2010 WL 715429, at *1; *see also Pinehaven Plantation Prop., LLC v. Mountcastle Family LLC*, No. 1:12-CV-62, 2013 WL 6734117 (M.D. Ga. Dec. 19, 2013) ("[I]t is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery."). Applying this heightened relevance test within the framework of Rule 45(d)(3), the Motion to Quash Mr. Garvin's Deposition should be granted.

**A. This Motion is Timely.**

To avoid compliance with a deposition subpoena, a non-party must move to quash or for a protective order prior to the scheduled deposition. *See E.E.O.C. v. Rexnord Indus., LLC*, No. 11-CV-777, 2012 WL 2525652, at *2–3 (E.D. Wis. June 29, 2012) ("[I]n general, courts have read 'timely' to mean within the time set in the subpoena for compliance.") (quoting *Adv. Portfolio Techs., Inc. v. Stroyny,* No. 06–MISC–065, 2006 WL 3761330, *2 (E.D. Wis. Dec.18, 2006)); *see also Estate of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006) ("It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of

---

[6] Mr. Garvin takes no position on their relevancy of Plaintiffs' deposition testimony to the case. That said, it is difficult to imagine that a plaintiff to a lawsuit has no relevant testimony to offer. After all, unlike Mr. Garvin and his employer, Plaintiffs were at least parties to the underlying proceeding before the PSC that is now at issue in *Driftless*.

10

y

the subpoena."); *MetroPCS v. Thomas*, 327 F.R.D. 600, 615 (N.D. Tex. 2018) ("Ms. Frazin timely filed her Rule 45([d])(3)(A) Motion to Quash the day before the deposition and document production were required by the Subpoena, and the Court then stayed further compliance pending the Motion to Quash's resolution. While 'timely' is not defined in the rule nor elaborated upon in the advisory committees notes, in general, courts have read 'timely' to mean within the time set in the subpoena for compliance.").

Here, the return date of the Deposition Subpoena is November 2, 2020. (Garvin Decl., Exh 1 thereto.) This Motion to Quash is filed prior to that date and therefore is timely.

### B. The Eastern District is the proper venue for this Motion.

Rule 45(d)(3)(A)(iv) provides that "the court *for the district where compliance is required* must quash or modify a subpoena that … subjects a person to undue burden." (emphasis added). Here, compliance with the Subpoena requires Mr. Garvin's appearance for a deposition by video. Mr. Garvin lives in Delafield in Waukesha County, Wisconsin. (Garvin Decl., ¶ 3.) If forced to comply with the Deposition Subpoena, Mr. Garvin would appear for the deposition from within this District, which makes this Court—not the Western District, where the underlying action is pending—the proper venue for this Motion to Quash. *Cf. Todd v. Ocwen Loan Servicing, Inc.*, No. 219CV00085JMSDLP, 2019 WL 8272621, at *2 (S.D. Ind. Dec. 13, 2019) ("Federal Rule of Civil Procedure 45 requires a motion to quash to be directed to the court for the district where compliance is required…. Mr. Faris's deposition was scheduled to take place in Palm Beach, Florida. Thus, the deposition subpoena requires compliance in a district other than the Southern District of Indiana. This Court, therefore, cannot consider a Rule 45 motion related to the Plaintiff's deposition subpoena."); *see also In re Subpoenas to Wisconsin Energy Corp.*,

11

2010 WL 715429, at *1 (Eastern District granting non-party Wisconsin Energy Corporation's motion to quash subpoena initiated by plaintiffs' counsel in case pending in Western District).

### C. The balance of interests favors quashing the subpoena.

The Court must compare "the hardship to the party [or person] against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied." *Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150, 1159 (7th Cir.1984) (en banc). "The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Arassi*, 2014 WL 1385336, at *2. "[W]hile it is [the movant's] burden to put forth evidence of the burden on her, [t]he party seeking the deposition] must respond with evidence of a need that outweighs this burden." *Ameritox*, 2015 WL 420308, at *2.

Applying these standards here, Plaintiffs should not be permitted to depose Mr. Garvin. First, the discovery sought from Mr. Garvin certainly is not critical; it is not even relevant to the issues in the case, as framed by Plaintiffs' Complaint. Second, the hardship to Mr. Garvin of appearing for a deposition outweighs any claimed hardship to Plaintiffs if this Motion is denied.

1. Mr. Garvin has no relevant testimony to provide.

To be clear, Mr. Garvin has had no involvement whatsoever with the Cardinal-Hickory Creek project, nor has he ever discussed the matter with a PSC Commissioner. (Garvin Decl., ¶¶ 5, 7.) Mr. Garvin's employer, WEC, has had no involvement with the PSC's CPCN proceeding on the Cardinal-Hickory Creek project. (*Id.*, ¶ 5.) In fact, WEC declined to sign a joint letter of support for the CPCN application before the PSC. (*Id.*, ¶ 6.) In summary, neither Mr. Garvin nor WEC was "centrally involved in the case," and therefore Mr. Garvin has no relevant testimony regarding any of Commissioner's alleged "entanglements." (*Cf.* Exh. B, ¶ 3 (alleging that

12

"entanglements with other parties *centrally involved in the case* presented conflicts of interest and at least an appearance of bias and lack of impartiality" (emphasis added)); *see also Driftless* Dkt. 94 at 14 (Plaintiffs arguing in their own motion for protective order that deposition topics were not relevant where the Complaint did not plead any allegations with respect to that issue).)

Indeed, Plaintiffs' Complaint makes no references whatsoever to Mr. Garvin. When alleging that Commissioner Huebsch should have recused himself from the Cardinal-Hickory Creek matter, Plaintiffs cite to Commissioner Huebsch's relationship with *MISO*—as opposed to WEC, a non-party to an underlying PSC proceeding. Mr. Garvin has no involvement or role in the Midcontinent Independent System Operator ("MISO") transmission planning processes relating to the Cardinal-Hickory Creek Project or any other transmission project in the MISO footprint. (Garvin Decl., ¶ 8.) Mr. Garvin has no testimony to offer regarding Commissioner Huebsch's relationship with MISO as related to the Cardinal-Hickory Creek project. (*Id.*, ¶ 8.)

When claiming that Commissioner Valcq should have recused herself from the matter, Plaintiffs cite the "extent of [her] relationship with We Energies and WEC Energy Group," *i.e.*, her former employment with WEC and, subsequently, with one of WEC's outside law firms, Quarles & Brady. Mr. Garvin has no unique personal knowledge on that matter, nor have Plaintiffs alleged that he does. (*Id.*, ¶ 9.) *See Gumwood HP Shopping Partners L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268-JD-CAN, 2015 WL 13664418, at *4 (N.D. Ind. July 7, 2015) (a party requesting the deposition of "a high-level decision maker who is removed from the daily subjects at issue in the litigation" must have "unique personal knowledge" of relevant facts before being deposed").

In response, Plaintiffs are sure to point to a text message they received from Defendants in discovery, in which Mr. Garvin's name is *mentioned is passing* in connection with a conversation

13

about the personal health status of his brother, John Garvin (of ATC), after John Garvin underwent major surgery in April 2019. (*Driftless* Dkt. 97 at 6, ¶ 18; Garvin Decl., ¶ 10.) There, Commissioner Huebsch suggested to John Garvin that his brother Robert might keep him (among others) informed of John's health status. (*See Driftless* Dkt. 108 at 20.) This is the best Plaintiffs can offer, and it does not establish or even remotely suggest that Mr. Garvin communicated with Commissioner Huebsch about the Cardinal-Hickory Creek project, much less justify Mr. Garvin's deposition. At best, it appears to reveal a human concern of the health of another person. In any event, Plaintiffs draw on this communication to assert that Commissioner Huebsch and Mr. Garvin "likely had a personal relationship." (*Driftless* Dkt. 97 at 9.) But a non-party deposition is not required to establish that fact. And more importantly, that fact is not relevant in the first instance, given Mr. Garvin's distance from the Cardinal-Hickory Creek project and CPCN application, as well as the utter lack of factual allegations regarding Mr. Garvin in the Complaint (including the lack of any allegation that Mr. Garvin may have sought to influence the PSC on behalf of WEC or the Cardinal-Hickory Creek project). Because facts sought from Mr. Garvin are not only irrelevant, but can be obtained from other sources (like a stipulation from Commissioner Huebsch), the Deposition Subpoena is unduly burdensome. *See, e.g.*, *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 993 (7th Cir.2002) (subpoena seeking irrelevant information imposes an undue burden); *Fid. & Deposit Co. of Maryland v. Edward E. Gillen Co.*, No. 13-C-1291, 2015 WL 403817, at *1 (E.D. Wis. Jan. 28, 2015) ("If it is true that the subpoenas seek irrelevant information, then they should be quashed, as they would subject Paschen LLC and the Joint Venture to an undue burden."); *see also N. Indiana Pub. Serv. Co. v. Platt Envtl. Servs., Inc.*, No. 3:09-CV-164 RL, 2010 WL 11583108, at *3 (N.D. Ind. Jan. 20, 2010) (granting motion to quash deposition subpoena where serving party "failed to show how the requested documents and depositions would produce

relevant information"); *City of Fairview Heights v. Orbitz, Inc.*, No. 3:05-CV-840-DRH, 2007 WL 9777862, at *5 (S.D. Ill. Nov. 9, 2007), *objections overruled,* No. 05-CV-840-DRH, 2008 WL 920390 (S.D. Ill. Apr. 3, 2008) ("Given this Court's conclusion that these depositions do not seek relevant evidence, are not likely to lead to admissible evidence, and that the burden or expense of taking these depositions outweighs its likely benefits, it follows that these depositions would also constitute an undue burden under Rule 45.").

Based on the allegations in Plaintiffs' Complaint, they are attempting to prove that "certain Defendants['] … entanglements with other parties centrally involved in this case presented conflicts of interest and at least an appearance of bias and lack of impartiality when the totality of the circumstances is considered." (Exh. B, ¶ 3.) Neither Mr. Garvin nor WEC were "centrally involved" (or involved at all for that matter). Plaintiffs cannot tie Mr. Garvin's testimony on any matter to a meaningful disputed issue in their case. *See In re Heartland Inst.*, No. 11 C 2240, 2011 WL 1839482, at *3 (N.D. Ill. May 13, 2011) ("There is a pronounced difference between the word 'relevant' and the concept of 'relevance to the merits of the litigation.' For the purpose of the instant motion, based on the fact presented, Plaintiffs have not shown that the information sought from Third Parties is crucial to Plaintiffs' case or that it even relates to the merits of the case."); *compare Ameritox*, 2015 WL 420308, at *1 (denying motion to quash after finding "specific information sought in this deposition is necessary for Ameritox's prosecution of its infringement claim, most specifically, for its claim of willful infringement—or, at least, Bryan has failed to demonstrate that any burden on her outweighs the value of her testimony—and could not have been fully anticipated at previous depositions").

2. <u>The burden to Mr. Garvin of a deposition outweighs any claimed hardship to Plaintiffs if this Motion is denied.</u>

As a non-party to the case, Mr. Garvin's deposition is inherently burdensome. *See*

*Gumwood*, 2015 WL 13664418, at *4 ("The burden on Krill and AnnTaylor [of a deposition] is even more significant given Krill's status as a non-party."). As an officer of Wisconsin's largest public utility holding company with responsibilities in four state and federal jurisdictions, Mr. Garvin maintains a busy schedule. (Garvin Decl. ¶ 11.) Neither he nor WEC has an interest in the *Driftless* litigation, and appearing for a deposition would needlessly take Mr. Garvin's time and attention away from his business and personal matters. (*Id.*, ¶ 12.)

The burden to Mr. Garvin is not outweighed by any conceivable benefit to Plaintiffs of taking his deposition. To the extent the Court determines that the fact that Mr. Garvin may have had a personal relationship with any Commissioner of the PSC is relevant (which Mr. Garvin disputes) and such a relationship goes to the merits of Plaintiffs' claims (which Mr. Garvin also disputes), Mr. Garvin's deposition is not necessary to establish that fact. Indeed, other sources (including written discovery or testimony from the Defendants in the case, or even a stipulation from Defendants) can readily establish the Commissioner's personal relationships. In fact, Mr. Garvin offers that fact in the attached Declaration. (Garvin Decl., ¶ 13.) Plaintiffs simply cannot show a "substantial need for the testimony or material that cannot be otherwise met without undue hardship" to Mr. Garvin. Fed. R. Civ. P. 45(d)(3)(C)(i).

Looking again to Plaintiffs' own arguments when attempting to avoid their *own* depositions, the Motion to Quash should be granted. (*Driftless* Dkt. 94 at 16 ("Requiring DALC and WWF to undergo depositions for information that is not relevant or that could be, or already has been, obtained through written discovery (or is already available in the Commission's online public docket) would be unduly burdensome.").) Indeed, Plaintiffs themselves contend that "[d]iscovery can also be denied if there is a less burdensome means of obtaining the information." (*Driftless* Dkt. 94 at 9 (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir.

16

2002)).  *See, e.g.*, *In re Heartland*, 2011 WL 1839482 ("Even if it is found that the information sought from Third Parties by Plaintiffs is relevant, by their own admissions, Plaintiffs have not shown that they have fully exhausted other reasonable sources of gaining the information sought in the subpoenas….  The record reflects that Plaintiffs' attempt to obtain the information from Third Parties' is not the least intrusive means of obtaining such information and borders on harassment.  Therefore, this court finds that Plaintiffs have not shown a compelling need for the information being sought.").  Here, there is no indication the Plaintiffs have attempted to gain the information they seek from Mr. Garvin's deposition through less intrusive means.

The procedural posture of this case presents a final consideration regarding the Plaintiffs' purported need for Mr. Garvin's testimony.  Defendants' fully-briefed Motion to Dismiss (which will be immediately appealed if denied) is pending before the Western District and, at any moment, could moot the need for Mr. Garvin's testimony.  Also pending is Plaintiffs' Motion to Compel all communications between Commissioner Huebsch and WEC (and any of its employee, attorneys, and affiliates).  If the Motion to Compel is *granted*, Plaintiffs would have no colorable argument that Mr. Garvin's testimony is necessary to establish the fact that he had a personal relationship with Commissioner Huebsch, which Plaintiffs apparently argue is enough to establish that Commissioner Huebsch should have recused himself.  (*Driftless* Dkt. 97 at 10.)  If the Motion to Compel is *denied*, such denial would only confirm that Commissioner Huebsch's relationship with WEC (and, by extension, Mr. Garvin) is irrelevant.  Plaintiffs should not be permitted to end-run the Western District's ruling on their Motion to Compel, particularly when they have not yet completed written discovery or deposed any Defendant.

Because Mr. Garvin is a non-party to the case, his testimony is not relevant to the issues presented in the case, and any arguably-relevant testimony can be readily obtained from other

17

sources (*i.e.*, the parties to the litigation), the Deposition Subpoena is unduly burdensome and should be quashed.

## CONCLUSION

Mr. Garvin respectfully requests that the Court quash the Deposition Subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iv).

Dated:  October 30, 2020          Respectfully submitted**,**

         */s/  Patrick S. Nolan*
         Patrick S. Nolan (SBN 1020233)
         Quarles & Brady LLP
         411 East Wisconsin Avenue
         Suite 2350
         Milwaukee, WI 53202
         patrick.nolan@quarles.com
         Phone:  414-277-5465

         *Attorneys for Movant Robert Garvin*